1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| ROBERT DORFMAN, on behalf of himself and all others similarly situated, | CASE NO. 13cv0873 WQH (RBB) |
| Plaintiff, | ORDER |
| vs. | |
| NUTRAMAX LABORATORIES, INC.; WAL-MART STORES, INC.; and RITE-AID CORPORATION, | |
| Defendants. | |

11
12
13
14
15
16

HAYES, Judge:

17        The matter before the Court is the Motion to Dismiss (ECF No. 8) filed by

18   Defendants Nutramax Laboratories, Inc., Wal-Mart Stores, Inc., and Rite-Aid

19   Corporation.

20                              **BACKGROUND**

21        On April 11, 2013, Plaintiff Robert Dorfman initiated this action with a Class

22   Action Complaint on behalf of himself and all others similarly situated.  The Complaint

23   alleges that Defendants distribute, market and sell the "Cosamin" line of "Joint Health

24   Supplements" with advertising that is false, misleading, and likely to deceive the public.

25   (Complaint ¶ 1, ECF No. 1).

26        On May 21, 2013, Defendants Nutramax Laboratories, Inc. ("Nutramax"), Wal-

27   Mart Stores, Inc. ("Wal-Mart"), and Rite-Aid Corporation ("Rite-Aid") filed the Motion

28   to Dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and

1   12(b)(6).  (ECF No. 8).  On June 17, 2013, Plaintiff filed an opposition.  (ECF No. 10).

2   On June 24, 2013, Defendants filed a reply.  (ECF No. 11).

3                    **ALLEGATIONS OF THE COMPLAINT**

4        "Nutramax manufactures, distributes, and sells the Cosamin line of dietary

5   supplements. Those products include Cosamin DS and Cosamin ASU" (the "Cosamin

6   products").  (Complaint ¶ 15, ECF No. 1).  "Since the Cosamin products' launch,

7   Nutramax has consistently conveyed the message to consumers throughout California

8   that the Cosamin products, with their 'exclusive formula' will reduce joint pain and

9   protect joint cartilage of all persons who ingest Cosamin. These are claims false and

10  misleading, and are not substantiated by competent scientific evidence." *Id.* ¶ 17.

11       Wal-Mart and Rite-Aid "market and sell the Cosamin products at issue, and

12  participated in the dissemination of the representations concerning the efficacy of the

13  Cosamin products and adopted the representations as their own." *Id.* ¶ 18.  Wal-Mart

14  and Rite-Aid "entered into marketing and sales agreements with Nutramax to further

15  promote and repeat the false and deceptive statements at issue." *Id.*

16       "Plaintiff Robert Dorfman resides in San Diego County, California." *Id.* ¶ 11.

17  In October of 2012, "Plaintiff was exposed to and saw the representations described

18  herein regarding the joint health benefits of Cosamin DS by reading the Cosamin DS

19  product label in a Rite-Aid store near his home in Del Mar, California.  Thereafter,

20  Plaintiff was again exposed to and saw the representations described herein regarding

21  the joint health benefits of Cosamin DS by reading the Cosamin DS product label in a

22  Wal-Mart store located in San Diego, California." *Id.*  "In reliance on the claims listed

23  on the product label ..., and specifically those claims listed on the front of the product

24  label, that Cosamin would, 'protect his cartilage' and 'reduce his joint pain,' Plaintiff

25  purchased the Cosamin DS product at a Rite-Aid store [in] California, and at a Wal-

26  Mart store [in] California." *Id.*  "He paid approximately $35.00 for the product at Rite-

27  Aid.  He paid approximately $25.00 for the product at Wal-Mart." *Id.*  "On each

28  occasion, [Plaintiff] purchased the product believing it would provide the advertised

1  joint health benefits and improve his joint soreness and comfort.... Had Plaintiff known

2  the truth about Defendants' misrepresentations and omissions, he would not have

3  purchased the Cosamin DS product." *Id.*

4       "Plaintiff brings this action on behalf of himself and other similarly situated

5  consumers [in California] who have purchased the Cosamin products to halt the

6  dissemination of this false, misleading and deceptive advertising message, correct the

7  false and misleading perception it has created in the minds of consumers, and obtain

8  redress for those who have purchased the Cosamin products." *Id.* ¶ 17; *see also id.* ¶

9  63.

10      "The primary active ingredient in all the Cosamin products is glucosamine

11  hydrochloride. Glucosamine is an amino sugar that the body produces and distributes

12  in cartilage and other connective tissue. Cosamin DS and Cosamin ASU also contain

13  chondroitin sulfate. Chondroitin sulfate is a complex carbohydrate found in the body's

14  connective tissues." *Id.* ¶ 20. "There is no competent scientific evidence that taking

15  glucosamine hydrochloride chondroitin sulfate – let alone through oral administration

16  – results in the body metabolizing it into something that provides the advertised joint

17  health and cartilage benefits, including relieving the major symptoms of arthritis." *Id.*

18  ¶ 22. "Cosamin ASU contains Nutramax's ASU blend, a combination of

19  avocado/soybean unsaponifiables and soy protein isolate and green tea leaf extract.

20  There is no competent scientific evidence that taking any of these ingredients – let alone

21  through oral administration – results in the body metabolizing them into something that

22  relieves any of the major symptoms of arthritis." *Id.* ¶ 23.

23      "Contrary to the stated representations on all the Cosamin products' labeling and

24  packaging, Defendant does not possess (and has not possessed) competent scientific

25  evidence that any of these ingredients, taken alone or in combination, are effective in

26  providing the advertised joint health and cartilage benefits, including treating the major

27  symptoms of arthritis or any other joint related ailments." *Id.* ¶ 24. "Despite scientific

28  studies which demonstrate that the claims are false and deceptive, and no scientifically

1  valid confirmation that the Cosamin products are an effective 'joint health supplement'

2  – let alone an effective treatment for *all* joints in the human body, for customers of *all*

3  ages and for *all* stages of joint disease – Nutramax states on the Cosamin products'

4  packaging and labeling that Cosamin is a 'Joint Health Supplement' that will 'reduce

5  joint pain' and 'protect cartilage cells from breakdown.'" *Id.* ¶ 25.

6        Photographs attached to the Complaint show Cosamin DS and Cosamin ASU

7  product packaging and labeling.  The Cosamin DS packaging states, in pertinent part:

8  "The ONLY brand proven effective in controlled, published U.S. studies to reduce joint

9  pain.  Shown in laboratory tests to protect cartilage cells from breakdown;" "Protect

10  your cartilage with the ONLY BRAND proven to reduce joint pain;" "The Orthopedic

11  Surgeon and Rheumatologist #1 Recommended Brand;" and "Help your joints last

12  longer."  *Id*; Pl. Exh. A, ECF No. 1-1 at 7-11.  The Cosamin ASU packaging states, in

13  pertinent part: "The #1 Brand Recommended by Orthopedic Specialists;" "Our most

14  potent formula for joint discomfort;" "Shown to work better than the combination of

15  glucosamine + chondroitin sulfate;" "Help your joints last longer;" and "Cosamin ASU

16  ... is the most complete and comprehensive joint support supplement available [and] is

17  supported by U.S. published research...."  (Complaint ¶ 25; Pl. Exh. A, ECF No. 1-1 at

18  2-5).

19        "Nutramax's statements on its website repeat and reinforce the false and

20  misleading joint health statements made on the packaging and labeling":

21      - Shown in laboratory tests to PROTECT CARTILAGE cells from
    breakdown.

22

23      - The ONLY brand proven effective in controlled, published U.S. clinical
    studies to reduce joint pain.

24      - Cosamin DS is the #1 Brand Recommended by Orthopedic Specialists.
    As a joint health supplement, Cosamin DS helps reduce joint pain and

25      stiffness by using ingredients that are safe, effective, and easily absorbed.
    Cosamin DS is superior to all other brands and has been proven effective

26      in published clinical studies.

27      - Cosamin is shown effective in peer-reviewed, controlled, published U.S.
    research.

28

(Complaint ¶ 26, ECF No. 1).  "The Cosamin television commercials repeat the same

advertising message...." *Id.* ¶ 27.

"[I]n addition to providing pictures of the false and deceptive packaging and labeling for the Cosamin products," Wal-Mart and Rite-Aid make additional statements on their websites "that repeat and reinforce the false and misleading joint health statements made on the packaging and labeling." *Id.* ¶¶ 28, 31.

"Contrary to the stated representations on all the Products' labeling and packaging, and throughout Defendants' other advertising and marketing for the Products, Defendants do not possess (and has not possessed) competent scientific evidence that any of these ingredients, taken alone or in combination, are effective in treating the major symptoms of arthritis or any other joint related ailments." *Id.* ¶ 34.

"Defendants knew or should have known that glucosamine alone and taken in combination with the other ingredients present in Cosamin have no actual medicinal value and do not provide any of the warranted benefits as represented by Defendants' Cosamin products' packaging, labeling and other advertising.  In fact, there is no scientific study demonstrating that any glucosamine product can regenerate cartilage. To the contrary, as numerous studies have confirmed, neither glucosamine, chondroitin, nor any other supplements or ingredients actually regenerate cartilage or provide joint comfort or relief from pain." *Id.* ¶ 35; *see also id.* ¶¶ 36-57 (allegations regarding studies that purportedly refute Defendants' representations regarding the Cosamin products).

"The studies identified by Nutramax on its website are fundamentally flawed, not scientifically valid and/or possess obvious, unmitigated bias, *i.e.* the study itself was sponsored by Nutramax." *Id.* ¶ 58. "To date, there are only two studies, both of which are more than a decade old and analyze a form of glucosamine not in the Cosamin products, purporting to claim that the ingestion of glucosamine can affect the growth or deterioration of cartilage, both sponsored by a glucosamine supplement manufacturer....   [T]he methodologies in those studies had 'inherently poor reproducibility,' and even minor changes in posture by the subjects during scans could

cause false apparent changes in cartilage.... [N]either study examined the form of glucosamine in [the Cosamin products] – glucosamine hydrochloride." *Id.* ¶ 59. "In fact, no reliable scientific medical study has shown that glucosamine hydrochloride and chondroitin, alone or in combination, have a structure modifying effect that will regenerate cartilage that has broken down or worn away." *Id.*

"Plaintiff and Class members have been and will continue to be deceived or misled by Defendants' deceptive representations touting the effectiveness of the Cosamin products." *Id.* ¶ 60. Plaintiff "read, considered and based his decisions to buy Cosamin on the above cited label representations. Because the Cosamin products' sole purpose is to provide joint relief for the major symptoms of arthritis, Defendants' representations and omissions were a material factor in influencing Plaintiff's decision to purchase Cosamin." *Id.* "Plaintiff would not have purchased Cosamin had he known that Cosamin was ineffective and Defendants did not possess competent scientific evidence to support the claims that it made about Cosamin." *Id.*

"Plaintiff and the Class members have been damaged in their purchases of the Cosamin products and have been deceived into purchasing products that they believed, based on Defendants' representations, were proven to be effective in treating the major symptoms of arthritis and other joint related ailments when, in fact, they are not." *Id.* ¶ 61.

Plaintiff asserts claims against Defendants for (1) violation of the Consumers Legal Remedies Act ("CLRA") (Cal. Civ. Code § 1750); (2) violation of California Business & Professions Code § 17200 ("Unfair Competition Law" or "UCL"); and (3) breach of express warranty. Plaintiff alleges subject-matter jurisdiction exists pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because the amount in controversy exceeds $5,000,000 and "there are in excess of 100 class members and many members of the Class are citizens of a state different from Defendants." *Id.* ¶ 8. Plaintiff seeks an order certifying the proposed class, an order that Defendants engage in a corrective advertising campaign, damages, restitution, disgorgement of Defendants'

1   revenues, declaratory and injunctive relief, and attorneys' fees and costs.

2   **STANDARDS OF REVIEW**

3   Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a defendant to move

4   for dismissal on grounds that the court lacks jurisdiction over the subject matter.  Fed.

5   R. Civ. P. 12(b)(1).  The burden is on the plaintiff to establish that the court has subject

6   matter jurisdiction over an action.  *Assoc. of Med. Colleges v. United States,* 217 F.3d

7   770, 778-779 (9th Cir. 2000).  In resolving an attack on a court's jurisdiction, the court

8   may go outside the pleadings and consider evidence beyond the complaint relating to

9   jurisdiction without converting the motion to dismiss into a motion for summary

10   judgment.  *Safe Air For Everyone v. Doyle,* 373 F.3d 1035, 1039 (9th Cir. 2004).

11   Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state

12   a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "A pleading that

13   states a claim for relief must contain ... a short and plain statement of the claim showing

14   that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Dismissal under Rule

15   12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient

16   facts to support a cognizable legal theory.  *See Balistreri v. Pacifica Police Dep't*, 901

17   F.2d 696, 699 (9th Cir. 1990).

18   To sufficiently state a claim for relief and survive a Rule 12(b)(6) motion, a

19   complaint "does not need detailed factual allegations" but the "[f]actual allegations

20   must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v.*

21   *Twombly*, 550 U.S. 544, 555 (2007).  A plaintiff's "grounds" to relief requires more

22   than labels and conclusions, and a formulaic recitation of the elements of a cause of

23   action will not do."  *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).  When considering a motion

24   to dismiss, a court must accept as true all "well-pleaded factual allegations."  *Ashcroft*

25   *v. Iqbal*, 556 U.S. 662, 679 (2009).  However, a court is not "required to accept as true

26   allegations that are merely conclusory, unwarranted deduction of fact, or unreasonable

27   inferences."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  "In

28   sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content,

1  and reasonable inferences from that content, must be plausibly suggestive of a claim

2  entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir.

3  2009) (quotations omitted).

4                                    **DISCUSSION**

5          Pursuant to Federal Rule of Civil Procedure 12(b)(1), Defendants contend that

6  the Court should dismiss Plaintiff's claims related to Cosamin ASU and certain product

7  representations for lack of standing.  Pursuant to Federal Rule of Civil Procedure

8  12(b)(6), Defendants contend that the Court should (1) dismiss all claims against Rite-

9  Aid and Wal-Mart on the basis that neither store owed Plaintiff a duty of care under the

10 CLRA or UCL; (2) dismiss all claims against Wal-Mart on the basis that Plaintiff has

11 failed to adequately allege that he relied on any representations at Wal-Mart; and (3)

12 dismiss the Complaint in its entirety for failure to state any claim upon which relief can

13 be granted.

14 **I.     Motion to Dismiss for Lack of Standing**

15         Article III of the United States Constitution restricts federal judicial power to the

16 adjudication of "cases" or "controversies."  U.S. Const. Art. III, § 2.  To establish

17 Article III standing, a plaintiff must have an injury in fact, which is traceable to the

18 defendant's acts and redressable by a court decision.  *See Lujan v. Defenders of*

19 *Wildlife*, 504 U.S. 555, 560–61 (1992).  Injury in fact results from the invasion of a

20 legally protected interested which is concrete and particularized, as well as actual or

21 imminent.  *Id*. at 560 (citations omitted).  In a class action, standing is satisfied if "at

22 least one named plaintiff meets the requirements."  *Bates v. UPS*, 511 F.3d 974, 985

23 (9th Cir. 2007) (en banc).

24         A plaintiff alleging a UCL claim must satisfy both Article III standing

25 requirements and UCL standing requirements.  *See Birdsong v. Apple, Inc.*, 590 F.3d

26 955, 960 n.4 (9th Cir. 2009).  A UCL plaintiff with standing is a person who has (1)

27 suffered injury in fact, and (2) lost money or property as a result of the unfair

28 competition.  *Degelmann v. Advanced Med. Optics, Inc.*, 659 F.3d 835, 839 (9th Cir.

1  2011) (citing Cal. Bus. & Prof. Code § 17204).  That is, UCL plaintiffs are required to
2  show that they have lost money or property sufficient to constitute an "injury in fact"
3  under Article III of the Constitution.  *Id.* (citing *Rubio v. Capital One Bank*, 613 F.3d
4  1195, 1203-04 (9th Cir. 2010); *Birdsong*, 590 F.3d at 959-60).

5       Under the CLRA, an action may be brought by "[a]ny consumer who suffers any
6  damage as a result of the use or employment by any person of a method, act, or practice
7  declared to be unlawful by Section 1770 ...."  Cal. Civ. Code § 1780(a).  In order to
8  have standing, a plaintiff must allege that he or she was damaged by an alleged
9  unlawful practice.  *See Johns v. Bayer Corp.*, No. 09CV1935 DMS-JMA, 2010 WL
10 476688, at *4 (S.D. Cal. Feb. 9, 2010) (Sabraw, J.) (citing *Meyer v. Sprint Spectrum
11 L.P.*, 45 Cal. 4th 634, 638 (2009)).

12      In this case, Defendants do not dispute that Plaintiff has satisfied the standing
13 requirements of both the UCL and CLRA as to the specific Cosamin DS product
14 Plaintiff allegedly purchased and the specific representations he allegedly relied upon.
15 Rather, Defendants contend that Plaintiff has not alleged facts sufficient to establish that
16 he has standing to: (1) assert any claim with respect to Cosamin ASU, which he does
17 not allege purchasing; (2) assert "any claims that are grounded upon or that rely upon
18 advertising claims that do not appear on the Cosamin DS product label;" or (3) request
19 injunctive relief.  (ECF No. 8 at 21).

20      **A.    Cosamin ASU and Representations Not On Cosamin DS Label**

21      Defendants contend that Plaintiff lacks standing to allege any claims concerning
22 Cosamin ASU.  Defendants contend that Cosamin ASU advertising – "even if false or
23 misleading – could not have caused [Plaintiff] any injury" because Plaintiff does not
24 allege that he purchased or used the product.[1]  (ECF No. 8 at 21).  Defendants contend

25

26 _____
      [1]Defendants further contend that Plaintiff lacks standing to allege a claim
27 regarding Cosamin ASU because the claim is "based solely upon an allegation that ...
   defendant lacks adequate substantiation for its advertising claims." (ECF No. 8 at 22).
   Defendants also raise this contention pursuant to Federal Rule of Civil Procedure
28 12(b)(6) with respect to both Cosamin DS and Cosamin ASU.  The Court will address
   this contention in Part II.A.1 of this Order.

that Plaintiff lacks standing to allege any claim related to representations that do not appear on the Cosamin DS product label. *See, e.g., id.* at 23 ("The Complaint does not allege that Plaintiff relied on any internet or television advertising statements.").

Plaintiff contends that "[t]he Cosamin [DS] products are sold using the same advertising and contain the same ingredients touted in those [Cosamin ASU] advertisements, readily meeting the standing requirements." (ECF No. 10 at 18). Plaintiff contends that he "saw and relied on the false advertising claims," and "need not have seen every advertisement in which the claim was made in order to challenge the advertising campaign." *Id.* at 21.

There is no controlling authority on whether Plaintiff has standing to bring claims on behalf of others for a product that is similar (but not identical) to the product that Plaintiff purchased. *See Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 921-22 (N.D. Cal. 2012) (collecting cases). Some district courts have held that a plaintiff lacks standing to assert such claims. *See, e.g., Granfield v. NVIDIA Corp.*, No. C 11–05403 JW, 2012 WL 2847575, at *6 (N.D. Cal. July 11, 2012) ("[W]hen a plaintiff asserts claims based both on products that she purchased and products that she did not purchase, claims relating to products not purchased must be dismissed for lack of standing."); *Brown v. Hain Celestial Grp., Inc.*, 913 F. Supp. 2d 881, 889-90 (N.D. Cal. 2012) (collecting cases). Others have held that the standing inquiry relates to the typicality and adequacy of representation and is best addressed at the class certification stage pursuant to Federal Rule of Civil Procedure 23. *See, e.g., Bruno v. Quten Research Inst.*, LLC, 280 F.R.D. 524, 530 (C.D. Cal. 2011) ("[W]hether a class representative may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation."); *Allen v. Similasan Corp.*, No. 12CV0376, 2013 WL 2120825, at *4 (S.D. Cal. May 14, 2013) (Moskowitz, C.J.) (same); *Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1161 (C.D. Cal. 2012) (denying defendants' motion to dismiss because the "argument is better taken under the lens of typicality or

adequacy of representation, rather than standing"); *Cardenas v. NBTY, Inc.*, 870 F. Supp. 2d 984, 992 (E.D. Cal. 2012) (analyzing "solely under Rule 23" whether plaintiff may assert claims on behalf of purchasers of products she did not purchase); *Greenwood v. CompuCredit Corp.*, No. 08–04878 CW, 2010 WL 4807095, at *3 (N.D. Cal. Nov. 19, 2010); *Arevalo v. Bank of Am. Corp.*, 850 F. Supp. 2d 1008, 2011 WL 1195973, at *4 (N.D. Cal. Mar. 29, 2011).

"The majority of the courts that have carefully analyzed the question hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar." *Brown*, 913 F. Supp. 2d at 890 (collecting cases); *see also, e.g., Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. C–11–2910 EMC, 2012 WL 2990766, at *11 (N.D. Cal. July 20, 2012) (noting that in most reasoned opinions, "the critical inquiry seems to be whether there is sufficient similarity between the products purchased and not purchased").

In *Astiana*, the district court found sufficient similarity where the plaintiffs challenged the same kind of food products (ice cream) and similar representations for all of the products – i.e., "All Natural Flavors" for the Dreyer's products and "All Natural Ice Cream" for the Haagen-Dazs products. *Id.* at *13.  The court explained:

> That the different ice creams may ultimately have different ingredients is not dispositive as Plaintiffs are challenging the same basic mislabeling practice across different product flavors. Indeed, many of the ingredients are the same – i.e., 21 out of 59 ice creams contain propylene glycol monostearate; 43 out of 59 contain potassium carbonate; and all 59 appear to contain glycerin, mono and diglycerides, tetrasodium pyrophosphate, and xanthan gum.... Therefore, the Court rejects [the defendant's] argument that claims based on ice cream products not purchased by Plaintiffs should be dismissed from the case.

*Id.*  Similarly, in *Anderson v. Jamba Juice Co.*, the district court held that the plaintiff, who purchased several flavors of at-home smoothie kits labeled "All Natural," had standing to bring claims on behalf of purchasers of other flavors because the products were sufficiently similar and the "same alleged misrepresentation was on all of the smoothie kit[s] regardless of flavor...." *Anderson v. Jamba Juice*, 888 F. Supp. 2d 1000,

1005-06 (N.D. Cal. 2012) (relying on *Dreyer's* for the same proposition). In *Cardenas v. NBTY*, a case involving products similar to this case, the plaintiff had standing to pursue claims against all products that shared similar ingredients and representations:

> [T]he court determines that Plaintiff has standing to assert her UCL and CLRA claims based on her purchase of Osteo Bi–Flex Regular Strength and the product's more general representations that its line of Osteo Bi–Flex products, which ostensibly share many similarities in ingredients, 'improve mobility,' 'improve joint comfort,' and 'support[ ] renewal of cartilage.'

*Cardenas*, 870 F. Supp. 2d at 992.

In this case, although Plaintiff alleges that he purchased Cosamin DS, not Cosamin ASU, and alleges that he relied solely on representations on "the Cosamin DS product label" (Complaint ¶ 11), Plaintiff challenges the same type of supplements based on largely the same ingredients and representations.  Plaintiff alleges that Cosamin ASU and Cosamin DS both contain the same "primary active ingredient," glucosamine and chondroitin sulfate; that Cosamin ASU and Cosamin DS both contain chondroitin sulfate; and that Cosamin ASU and Cosamin DS are both advertised as "The #1 Brand Recommended By Orthopedic Specialists" that will "help[] your joints last longer." *Id.* ¶¶ 20, 25.  The Complaint alleges that "[t]he Cosamin television commercials repeat the same advertising message...." *Id.* ¶¶ 27.  The Complaint alleges that Nutramax's website "repeat[s] and reinforce[s] the false and misleading joint health statements made on the packaging and labeling" and that Wal-Mart and Rite-Aid have statements on their websites "that repeat and reinforce the false and misleading joint health statements made on the packaging and labeling." *Id.* ¶¶ 28, 31.

The Court finds that Plaintiff has alleged sufficient similarities between the ingredients and represented health benefits of Cosamin DS and Cosamin ASU to avoid dismissal of any claims at this stage of the proceedings.  Defendants' contentions regarding differences in the Cosamin products and/or product representations are best addressed at the class certification stage rather than the motion to dismiss stage.

**B.    Injunctive Relief**

"To establish standing to prospective injunctive relief, Plaintiff must demonstrate

1  that 'he has suffered or is threatened with a 'concrete and particularized' legal harm ...

2  coupled with 'a sufficient likelihood that he will again be wronged in a similar way.'

3  Plaintiff must establish a 'real and immediate threat of repeated injury.'"  *Mason v.*

4  *Nature's Innovation, Inc.*, No. 12cv3019 BTM-DHB, 2013 WL 1969957 (S.D. Cal.

5  May 13, 2013) (Moskowitz, C.J.) (quoting *Bates v. United Parcel Serv., Inc.*, 511 F.3d

6  974, 985 (9th Cir. 2007) (quotation omitted)).

7      Defendants contend that Plaintiff lacks standing to request injunctive relief

8  because he does not allege that "he is likely to purchase either of the Cosamin products

9  again...." (ECF No. 8 at 22).  Plaintiff contends he has standing to seek injunctive relief

10  because he "has suffered an injury in fact based on Defendants' ongoing material

11  misrepresentations" and "he represents a class of people who are realistically threatened

12  by repetition of Defendants' conduct." (ECF No. 10 at 25-26).

13      In *Mason v. Nature's Innovation, Inc.*, the plaintiff alleged several false and

14  misleading advertising claims similar to those alleged in this case.  The district court

15  noted that courts in this circuit "are split over the issue of whether a plaintiff, who is

16  seeking to enjoin a seller or manufacturer from making false or misleading

17  misrepresentations about an item the plaintiff previously purchased, must be able to

18  establish that he would likely purchase the item again to establish standing." *Mason*,

19  2013 WL 1969957 at *2-*3 (collecting cases).  The court in *Mason* explained:

20  [A]s important as consumer protection is, it is not within the Court's
   authority to carve out an exception to Article III's standing requirements
21  to further the purpose of California consumer protection laws....

22  Moreover, plaintiffs who have no intention of again purchasing a product
   that is the focus of false advertising claims are not precluded from seeking
23  an injunctive remedy because they can sue in state court. 'In assessing
   standing, California courts are not bound by the 'case or controversy'
24  requirement of Article III of the United States Constitution, but instead are
   guided by prudential considerations.'
25
   *Id.* at *4-*5 (quoting *Bilafer v. Bilafer*, 161 Cal. App. 4th 363, 370 (2008)).  Finding it
26
   "apparent" that the plaintiff had "no intention of buying defendant's ... product again
27
   in the future" (based on the plaintiff's allegation that "the product has no efficacy"), the
28
   court in *Mason* concluded: "Plaintiff has not established the likelihood of future injury

1  from Defendant's alleged misrepresentations regarding the product and lacks Article

2  III standing to seek injunctive relief." *Id.* at *5.

3      Similarly, Plaintiff in this case alleges that "the Cosamin products' sole purpose

4  is to provide joint relief," and that "Cosamin was ineffective." (Complaint ¶ 60, ECF

5  No. 1).  The Complaint contains no allegations suggesting that Plaintiff would consider

6  purchasing another Cosamin product manufactured by Nutramax.  Accordingly, the

7  Court finds that Plaintiff has failed to adequately allege that he faces a "real and

8  immediate threat of repeated injury." *Bates*, 511 F.3d at 985.  Plaintiff lacks Article III

9  standing to seek injunctive relief. *See id.* The Motion to Dismiss Plaintiff's request for

10  injunctive relief is granted.

11  **II.    Motion to Dismiss for Failure to State a Claim**

12      Defendants move to dismiss the Complaint's UCL, CLRA and breach of express

13  warranty claims for failure to state a claim upon which relief can be granted pursuant

14  to Federal Rule of Civil Procedure 12(b)(6).

15      **A.    UCL and CLRA Claims**

16      California's UCL provides a cause of action for business practices that are (1)

17  unlawful, (2) unfair, or (3) fraudulent. Cal. Bus. & Prof. Code §§ 17200, *et seq*.  Its

18  coverage has been described as "sweeping," and its standard for wrongful business

19  conduct is "intentionally broad." *In re First Alliance Mortg. Co.*, 471 F.3d 977, 995

20  (9th Cir. 2006).  Each of the three "prongs" of the UCL provides a "separate and

21  distinct theory of liability" and an independent basis for relief. *Rubio v. Capital One*

22  *Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010) (internal quotation marks and citations

23  omitted).   In this case, although Plaintiff's claims sound primarily in fraud, Plaintiff

24  also alleges claims under the unlawful and unfair prongs of the UCL. *See* Complaint

25  ¶¶ 83-87, ECF No. 1.

26      The CLRA prohibits "'unfair methods of competition and unfair or deceptive acts

27  or practices' in transactions for the sale or lease of goods to consumers." *Daugherty v.*

28  *Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 833 (2006) (citing Cal. Civ. Code

§ 1770(a)).  "Conduct that is 'likely to mislead a reasonable consumer' ... violates the CLRA."  *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 680 (2006) (quoting *Nagel v. Twin Laboratories, Inc.*, 109 Cal. App. 4th 39, 54 (2003)).

### 1.    UCL "Fraudulent" Prong & CLRA

With respect to the "fraudulent" prong of the UCL, Plaintiff alleges: "Defendants' claims, nondisclosures and misleading statements ... are ... false, misleading and/or likely to deceive the consuming public...." (Complaint ¶ 88, ECF No. 1).

Plaintiff alleges Defendants violated the following four provisions of the CLRA: "[r]epresenting that [the Cosamin products] have ...  approval, characteristics, ...  uses [and] benefits ...  which [they do] not have," Cal. Civ. Code § 1770(a)(5); "[r]epresenting that [the Cosamin products] are of a particular standard, quality, or grade, ... if [they are] of another," *id.* § 1770(a)(7); "[a]dvertising goods ... with intent not to sell them as advertised," *id.* § 1770(a)(9); and "[r]epresenting that [the Cosamin products have] been supplied in accordance with a previous representation when [they have] not." *Id.* § 1770(a)(16).  These provisions of the CLRA proscribe both fraudulent omissions and fraudulent affirmative misrepresentations.  *Outboard Marine Corp. v. Superior Court*, 52 Cal. App. 3d 30, 36 (1975); *see also Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 255 (2011).   Plaintiff alleges claims under both theories.  *See* Complaint ¶ 75, ECF No. 1 ("Defendants violated and continue to violate the [CLRA] by representing and failing to disclose material facts on the Cosamin product labels and packages as described above when they knew, or should have known, that the representations were unsubstantiated, false and misleading and that the omissions were of material facts.").

The standard under both the CLRA and the "fraudulent" prong of the UCL is the "reasonable consumer" test, which requires a plaintiff to show that members of the public are likely to be deceived by the business practice or advertising at issue.  *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008); *see also Consumer*

1  *Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1360 (2003).  As a

2  result, courts often analyze these two statutes together.  *See, e.g., Paduano v. Am.*

3  *Honda Motor Co.*, 169 Cal .App. 4th 1453, 1468-73 (2009) (analyzing UCL and CLRA

4  claims together); *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1124-25 (N.D.

5  Cal. 2010) (same).  The UCL and CLRA prohibit "not only advertising which is false,

6  but also advertising which although true, is either actually misleading or which has the

7  capacity, likelihood or tendency to deceive or confuse the public."  *Kasky v. Nike, Inc.*,

8  27 Cal. 4th 939, 951 (2002).

9      Defendants contend that the Complaint fails to adequately allege the

10  representations at issue are "false or misleading."  Defendants contend the Complaint

11  merely alleges that Defendants "lack adequate substantiation" for their representations,

12  which is insufficient to state a claim for fraud under the UCL or CLRA.  Defendants

13  contend:

14      Considering the label claims upon which Plaintiff alleges he relied when
       purchasing Cosamin DS, and the conspicuous black box disclaimer on the
15      same label, the Court should find that studies questioning, or even
       disproving, the effect of glucosamine and/or chondroitin sulfate on
16      arthritis do not render plausible Plaintiff's allegations that Nutramax's
       advertising is 'false.'  Similarly, studies that only concern one of the
17      ingredients in Cosamin DS or that disprove claims that Nutramax never
       made (*e.g.*, 'cartilage regeneration') are equally insufficient to meet
18      federal pleading standards.

19  *Id.*

20      Plaintiff contends:

21      Defendants' only challenge to the UCL's fraudulent prong and the CLRA
       claim is to repeat their argument that Plaintiff does not plausibly allege
22      that the advertising is false and instead brings a claim based solely on a
       lack of substantiation theory for which he lacks standing....  Defendants'
23      argument is wrong, mischaracterizes the Complaint, ignores that the
       standard is likely to deceive, and should be rejected....
24
25  (ECF No. 10 at 27).  Plaintiff contends: "To the extent Defendants intend to assert that

26  its joint health message was not likely to deceive because of the small-print,

27  FDA-mandated disclaimer on the bottom, side panel of the packaging, this argument is

28  wholly premature and ignores the true scope of the UCL and CLRA."  *Id.*

       One court in this district recently summarized the "lack of substantiation" issue:

> In an action for false advertising under the UCL and CLRA, the plaintiff 'bears the burden of proving the defendant's advertising claim is false or misleading.' ... Private individuals may not bring an action demanding substantiation for advertising claims. Instead, pursuant to Cal. Bus. & Prof. Code § 17508, only prosecuting authorities may require an advertiser to substantiate its advertising claims.... The purpose of allowing only prosecuting authorities, and not private persons, to seek substantiation of advertising claims under Cal. Bus. & Prof.Code § 17508 is to 'prevent undue harassment of advertisers' and provide 'the least burdensome method of obtaining substantiation for advertising claims.'

*Stanley v. Bayer Healthcare LLC*, No. CV 11–862 IEG-BLM, 2012 WL 1132920, at *3, 2012 WL 1132920 (S.D. Cal. Apr. 3, 2012) (Gonzalez, C.J.) (citations omitted); *see also Chavez v. Nestle USA, Inc.*, No. CV-09-9192-GW-CW, 2011 WL 2150128, at *5 (C.D. Cal. May 19, 2011) *aff'd in part, rev'd in part on other grounds*, 511 F. Appx. 606 (9th Cir. 2013) (dismissing plaintiff's UCL and FAL claim because the "primary focus of the [complaint] is now, unarguably, on a supposed lack of substantiation for the advertised attributes of the nutrients contained in the Brain Development and Immunity products.").

Although some portions of the Complaint allege that Defendants lack adequate evidence to support their Cosamin representations, the Complaint also alleges that "[a]ll available scientific evidence demonstrates that the Cosamin products have no efficacy at all, are ineffective in the improvement of joint health, and provide no benefits related to the reduction of pain in human joints or protecting cartilage from breakdown." (Complaint ¶ 3, ECF No. 1). The Complaint further alleges: "Defendants knew or should have known that glucosamine alone and taken in combination with the other ingredients present in Cosamin have no actual medicinal value and do not provide any of the warranted benefits as represented by Defendants' Cosamin products' packaging, labeling and other advertising.... [A]s numerous studies have confirmed, neither glucosamine, chondroitin, nor any other supplements or ingredients actually regenerate cartilage or provide joint comfort or relief from pain." *Id.* ¶ 35. The Complaint describes twenty-two studies that purportedly refute Defendants' representations about the Cosamin products. *Id.* ¶¶ 36-57. These factual allegations do not merely suggest that there is a lack of evidence to substantiate Defendants' representations; rather, these

factual allegations suggest that evidence exists to refute the truth of Defendants' representations. Accordingly, the Court will not dismiss the Complaint's CLRA and UCL "fraudulent" prong claims on the basis that the Complaint alleges a lack of substantiation theory.

The Court finds that the Complaint adequately alleges facts suggesting that members of the public are likely to be deceived by the business practice or advertising at issue. *See Williams*, 552 F.3d at 938. The presence of a disclaimer on the Cosamin products does not require dismissal of the fraudulent advertising claims at this stage of the proceedings. *See, e.g., Johns*, 2010 WL 257349, at *4 (citing *Williams*, 552 F.3d at 938) ("While there are disclaimers and qualifying language, determining whether a reasonable consumer would be deceived is inappropriate at [the motion to dismiss] stage of the litigation.").

Finally, as Defendants point out, Plaintiff's CLRA and UCL fraud claims must satisfy Rule 9(b)'s heightened pleading standards. "Rule 9(b) requires a party to 'state with particularity the circumstances constituting fraud or mistake,' including 'the who, what, when, where, and how of the misconduct charged.'" *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (quoting *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)). The Ninth Circuit has "specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).

Plaintiff alleges that he purchased Cosamin DS from a Rite-Aid store in Del Mar and from a Wal-Mart store in San Diego in October 2012. (Complaint ¶¶ 11, 15, ECF No. 1). Plaintiff identifies the allegedly false and misleading representations made by Defendants. *Id.* ¶¶ 25-33. Plaintiff cites to several scientific studies that allegedly undermine Defendants' representations. *Id.* ¶¶ 36-57. The Court finds that these allegations are "sufficient[ly] detail[ed] ... to give us some assurance that [Plaintiff's] theory has a basis in fact." *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 989-90 (9th Cir. 2008). They provide Defendants "'notice of the particular misconduct which

1   is alleged ... so that they can defend against the charge and not just deny that they have

2   done anything wrong.'" *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)

3   (quoting *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993)).  "Rule 9(b) requires

4   no more." *Berson*, 527 F.3d at 990.  The Court concludes that the Complaint satisfies

5   the particularity requirements of Rule 9(b).

6        The Motion to Dismiss the CLRA and UCL "fraudulent" prong claims is denied.

7                    **2.    UCL "Unlawful" and "Unfair" Prongs**

8        In addition to his UCL and CLRA claims premised on fraud, Plaintiff also alleges

9   that Defendants violated the "unlawful" and "unfair" prongs of the UCL.

10       Defendants contend that Plaintiff has failed to allege violations of the "unlawful"

11  and "unfair" prongs of the UCL "beyond 'a formulaic recitation of the elements....'"

12  (ECF No. 8 at 26 (quoting *Twombly*, 550 U.S. at 555)).  With respect to the "unlawful"

13  prong, Plaintiff contends that the Complaint "alleges separate causes of action under the

14  CLRA and common law breach of warranty and the detailed facts to support the fraud

15  based predicate violations."  (ECF No. 10 at 28-29).  Plaintiff contends that the

16  Complaint adequately alleges a violation of the "unfair" prong because "Plaintiff

17  detailed the fact of false advertising and that 'false and misleading advertising, unfair

18  competition and deceptive conduct towards consumers' are the public policies that

19  Defendants violated.'"  *Id.* (quoting Complaint ¶ 86, ECF No. 1).

20       Under the UCL, an "unlawful" business practice "is an act or practice, committed

21  pursuant to business activity, that is at the same time forbidden by law." *Martinez v.*

22  *Welk Grp., Inc.*, 907 F. Supp. 2d 1123, 1139 (S.D. Cal. 2012) (Battaglia, J.) (citation

23  omitted).  "The UCL borrows violations from virtually any state, federal, or local law,"

24  and makes them independently actionable.  *Aguilar v. Boulder Brands, Inc.*, No.

25  12CV01862 BTM-BGS, 2013 WL 2481549, at *4 (S.D. Cal. 2013) (Moskowitz, C.J.)

26  (citing *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012))

27  Having concluded that Plaintiff has adequately alleged a claim against Defendants for

28  violation of the CLRA, discussed above, the Court concludes that Plaintiff has

adequately alleged a claim against Defendants for "unlawful" conduct in violation of the UCL.  *See Collins*, 202 Cal. App. 4th at 258 (CLRA violations may serve as the predicate for "unlawful" business practice actions under the UCL).

Under the UCL's "unfair" prong, the test for liability in consumer suits is currently "in flux," *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 735 (9th Cir. 2007), and there exists "disagreement among California courts regarding the definition of 'unfair'...."  *Rose v. Seamless Fin. Corp. Inc.*, 11CV00240 AJB-KSC, 2012 WL 3985964, at *9 (S.D. Cal. 2012) (Battaglia, J.) (citation omitted).    In *McKell v. Washington Mutual, Inc.*, 142 Cal. App. 4th 1457 (2006), the California Court of Appeal held that, "[a] business practice is unfair within the meaning of the UCL if it violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits."  *Id*. at 1473.   In determining whether a business practice is unfair under this approach, California courts balance the "impact on its alleged victim" against "the reasons, justifications, and motives of the alleged wrongdoer."   *Id*.  The Supreme Court of California rejected this approach in an anticompetitive practices case, holding that an "unfair" business practice claim must "be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 186-87 (1999).   While *Cel-Tech* disapproved of consumer cases applying the former balancing test, *id.* at 184-85, it expressly limited its holding to anticompetitive practices cases, stating: "Nothing we say relates to actions by consumers."  *Id*. at 187 n.12.  Following *Cel-Tech*, a split of authority developed concerning the standard for consumer claims under the "unfair" prong of the UCL.  *Compare Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 858 (N.D. Cal. 2012) (applying the balancing test), *and Mlejnecky v. Olympus Imaging Am. Inc.*, No. 2:10–CV–02630 JAM–KJN, 2011 WL 1497096, at *7 (E.D. Cal. Apr. 19, 2011) (same), *with Jackson v. Ocwen Loan Servicing, LLC*, No. 2:10–cv–00711–MCE–GGH, 2011 WL 587587, at *4 (E.D. Cal. Feb. 9, 2011)

1   (applying the tethering test), *with Chang Bee Yang v. Sun Trust Mortg., Inc.*, No.

2   1:10–CV–01541 AWI SKO, 2011 WL 3875520, at *8 (E.D. Cal. Aug. 31, 2011)

3   (applying both tests); *see generally Bardin v. Daimlerchrysler Corp.*, 136 Cal. App. 4th

4   1255, 1273–74 (2006) (discussing the split and the reasons for the split).

5       In this case, the Complaint adequately alleges that Defendants violated the

6   "unfair" prong of the UCL under either test.  The Court finds, for the reasons stated

7   above, that the allegations of the Complaint plausibly suggest that Defendants engaged

8   in an "immoral, unethical, oppressive or unscrupulous" business practice that "cause[d]

9   injury to consumers which outweigh[ed] its benefits."  *McKell*, 142 Cal. App. 4th at

10  1473.  The Court finds that the Complaint adequately alleges an "unfair" business

11  practice claim that is tethered to a legislatively declared policy.  *See* Complaint ¶ 86,

12  ECF No. 1 ("Plaintiff asserts violations of the public policy of engaging in false and

13  misleading advertising, unfair competition and deceptive conduct towards consumers.

14  This conduct constitutes violations of the unfair prong of Business & Professions Code

15  §17200 *et seq*."); *see Cel–Tech Commc'ns*, 20 Cal. 4th at 186-87.

16      The Motion to Dismiss the claims alleging violation of the "unlawful" and

17  "unfair" prongs of the UCL is denied.

18      ### 3.    Claims Against Rite-Aid And Wal-Mart

19      Defendants contend that Rite-Aid and Wal-Mart should be dismissed from this

20  action because "neither breached a duty to the Plaintiff by stocking and selling

21  Nutramax's products, nor does California law impose upon these retailers an obligation

22  to conduct independent research and analysis to verify every statement that Nutramax

23  and other manufacturers make."  (ECF No. 8 at 17).  Defendants assert: "The

24  allegations in the Complaint show that the statements made on boxes that contained the

25  bottles of Cosamin DS that Dorfman purchased were prepared by Nutramax, not Wal-

26  Mart or Rite-Aid."  *Id.* at 18.

27      Plaintiff contends that the Complaint adequately alleges CLRA and UCL claims

28  against Rite-Aid and Wal-Mart.  Plaintiff contends that the UCL imposes strict liability,

and that the CLRA merely requires an intent to sell the product at issue.  Plaintiff contends that Rite-Aid and Wal-Mart can be held liable under the CLRA and UCL because the Complaint alleges that the stores "independently and in cooperation with Nutramax made untrue representations."  (ECF No. 10 at 14).

It is well established that the "concept of vicarious liability has no application to actions brought under the unfair business practices act."  *Emery v. Visa Int'l Serv. Ass'n*, 95 Cal. App. 4th 952, 960 (2002) (quoting *People v. Toomey*, 157 Cal. App. 3d 1, 15 (1984)).  Rather, "[a] defendant's liability [under the UCL] must be based on [its] personal 'participation in the unlawful practices' and 'unbridled control' over the practices."  *Id*. (quoting *Toomey*, 157 Cal. App. 3d at 15); *see also In re Jamster Mktg. Litig.*, MDL 1751, 2009 WL 1456632, at *8 (S.D. Cal. May 22, 2009) (Miller, J.) (same); *In re Firearm Cases*, 126 Cal. App. 4th 959, 985 (2005) (rejecting UCL claim where defendants "did not control the wrongful acts [in question] or encourage others to engage in questionable acts," even though defendants did "have a relationship with the wrongdoers").  Similarly, under the CLRA, a defendant's liability must be based upon "participation or control in the alleged unlawful advertising scheme."  *In re Jamster Mktg. Litig.*, 2009 WL 1456632, at *9.

The Complaint alleges that both Wal-Mart and Rite-Aid: (1) "market and sell the Cosamin products at issue, and participated in the dissemination of the representations concerning the efficacy of the Cosamin products and adopted the representations as their own" (Complaint ¶ 18, ECF No. 1); (2) "entered into marketing and sales agreements with Nutramax to further promote and repeat the false and deceptive statements at issue," *id.*; (3) "provid[e] pictures of the false and deceptive packaging and labeling for the Cosamin products," *id.* ¶¶ 28, 31; and (4) "make[] ... statements on [their] website[s] that repeat and reinforce the false and misleading joint health statements made on the packaging and labeling." *Id.*  The Court finds that these allegations, if true, sufficiently demonstrate that Wal-Mart and Rite-Aid "participat[ed] in the unlawful practices" with "unbridled control over the practices," such that they

1  may be subjected to liability under the UCL and CLRA.  *Emery*, 95 Cal. App. 4th at

2  960; *see also In re Jamster Mktg. Litig.*, 2009 WL 1456632, at *9.

3          Next, Defendants contend that Plaintiff's UCL and CLRA claims against Wal-

4  Mart should be dismissed for lack of reliance because "Plaintiff does not allege how he

5  could have relied on any representations on the same bottle of Cosamin DS that he

6  purchased at Wal-Mart, after he had already reviewed, scrutinized and relied on the

7  label representations to make his earlier purchase at Rite-Aid."  (ECF No. 8 at 19).

8  Plaintiff contends that his second purchase at Wal-Mart "gives rise to another

9  independent violation" because he "alleges that he read and relied on the statements on

10 the Cosamin label prior to his purchase at Wal-Mart."  (ECF No. 10 at 17).

11         "A UCL plaintiff must plead facts demonstrating that her injury resulted from the

12 Defendant's alleged misconduct."  *Rosales v. FitFlop USA, LLC*, 882 F. Supp. 2d 1168,

13 1175 (S.D. Cal. 2012) (Whelan, J.) (citing *In re Tobacco II Cases*, 46 Cal. 4th 298, 328

14 (2009)).  A plaintiff may establish reliance by inference rather than direct evidence.  *See*

15 *Vasquez v. Superior Court*, 4 Cal. 3d 800, 814 (1971) ("The fact of reliance upon

16 alleged false representations may be inferred from the circumstances attending the

17 transaction....").

18         The Complaint alleges:

19             Plaintiff was exposed to and saw the representations described herein
              regarding the joint health benefits of Cosamin DS by reading the Cosamin
20            DS product label in a Rite-Aid store near his home in Del Mar, California.
              Thereafter, Plaintiff was again exposed to and saw the representations
21            described herein regarding the joint health benefits of Cosamin DS by
              reading the Cosamin DS product label in a Wal-Mart store located in San
22            Diego, California.  In reliance on the claims listed on the product label
              described herein and above, and specifically those claims listed on the
23            front of the product label, that Cosamin would, 'protect his cartilage' and
              'reduce his joint pain,' Plaintiff purchased the Cosamin DS product at a
24            Rite-Aid store located near his home in Del Mar, California, and at a Wal-
              Mart located at 4840 Shawline Street, San Diego, California 92111....  On
25            each occasion, [Plaintiff] purchased the product believing it would provide
              the advertised joint health benefits and improve his joint soreness and
26            comfort....   Had  Plaintiff  known  the  truth  about  Defendants'
              misrepresentations and omissions, he would not have purchased the
27            Cosamin DS product.

28 (Complaint ¶11, ECF No. 1).

1   Based upon these allegations, the Court finds it plausible that Plaintiff would not
2   have made his second Cosamin DS purchase at Wal-Mart had the product not contained
3   the same representations upon which he allegedly relied in making his first Cosamin DS
4   purchase at Rite-Aid. *See Vasquez*, 4 Cal. 3d at 814. The Court concludes that Plaintiff
5   has adequately alleged that he relied on the complained of representations in purchasing
6   Cosamin DS from Wal-Mart.

**B.   Breach of Express Warranty Claim**

8   Defendants contend that the Court should dismiss Plaintiff's breach of express
9   warranty claim in its entirety and with prejudice because "Plaintiff did not plead or
10  provide Defendants with notice of the alleged breach before filing suit," as required
11  under California Commercial Code § 2607(3)(A). Plaintiff contends that Nutramax, as
12  the manufacturer of the Cosamin products, was not required to receive pre-suit notice
13  pursuant to California Commercial Code §2607(3)(A). Plaintiff acknowledges that he
14  did not provide the requisite pre-suit notice of the alleged breach to Wal-Mart and Rite-
15  Aid.

16  A "buyer must, within a reasonable time after he or she discovers or should have
17  discovered any breach, notify the seller of breach or be barred from any remedy." Cal.
18  Com. Code § 2607(3)(A). The "notice requirement means pre-suit notice." *Alvarez v.*
19  *Chevron Corp.*, 656 F.3d 925, 932 (9th Cir. 2011). "However, when claims are against
20  a defendant in its capacity as a manufacturer, not as a seller, plaintiff is not required to
21  give notice." *Rosales*, 882 F. Supp. 2d at 1178 (citing *Aaronson v. Vital Pharms., Inc.*,
22  No. 09-CV-1333 W(CAB), 2010 WL 625337 (S.D. Cal. 2010) (Whelan, J.) (citation
23  omitted)).

24  The Complaint alleges claims against Nutramax in its capacity as a manufacturer,
25  not as a seller. Based upon these allegations, Plaintiff is not required to give notice to
26  Nutramax. *See id*. Accordingly, the Court denies the Motion to Dismiss the breach of
27  express warranty claim as to Nutramax. In light of Plaintiff's acknowledgment that he
28  failed to give Wal-Mart and Rite-Aid pre-suit notice (ECF No. 10 at 20), the Court

1  grants the Motion to Dismiss the breach of express warranty claim as to Rite-Aid and
2  Wal-Mart.  Such dismissal shall be without prejudice.  *See, e.g., Kearney v. Hyundai*
3  *Motor Co.*, SACV 09-1298 DOC, 2010 WL 9093204, at *7 (C.D. Cal. June 4, 2010)
4  (dismissing similar claim without prejudice).

5  **CONCLUSION**

6       IT IS HEREBY ORDERED that the Motion to Dismiss the Complaint (ECF No.
7  8) filed by Defendants Nutramax, Rite-Aid, and Wal-Mart is **GRANTED** in part.
8  Plaintiff's request for injunctive relief is **DISMISSED** without prejudice as to
9  Defendants Nutramax, Rite-Aid and Wal-Mart.  Plaintiff's third claim, for breach of
10 express warranty, is **DISMISSED** without prejudice as to Defendants Rite-Aid and
11 Wal-Mart.  In all other respects, the Motion to Dismiss is **DENIED**.

12
13 DATED:  September 23, 2013
                                   *William Q. Hayes*
14                                 **WILLIAM Q. HAYES**
                                   United States District Judge
15
16
17
18
19
20
21
22
23
24
25
26
27
28